*158 OPINION.
Tyson:
In this proceeding there is no dispute as to the amount of the petitioner’s “adjusted net income” within the meaning of section 351 (b) (3) of the Revenue Act of 1934. The primary question presented here is whether, in determining the amount of petitioner’s “undistributed adjusted net income”, the petitioner is entitled to a deduction of the amounts, totaling $97,700, paid to the Hawkins Co. and the Howard Co. during 1934, as amounts used to retire *159 indebtedness incurred prior to January 1, 1934, within the meaning of section 351 (b) (2) (B) of the Revenue Act of 1934.[1]
The petitioner contends that its tiro “promissory notes” given in December 1933 evidenced indebtedness incurred prior to January 1, 1934, and that the payments of $97,700 in question were made to retire a portion of such indebtedness, within the meaning of section 351 (b) (2) (B), supra. The respondent contends (1) that the instruments designated “promissory notes” were not evidences of indebtedness, but in reality constituted certificates of preferred stock issued by petitioner for contributions of capital subject to the risks of the enterprise and returnable only out of net earnings and that the payments in question were merely a return of capital and, if not certificates of preferred stock, respondent further contends (2) that petitioner’s “promissory notes” constituted contingent obligations payable only out of earnings and at the petitioner’s convenience and were not evidences of absolute obligations incurred prior to January 1, 1934, to pay fixed amounts on demand or within a given time and that the payments in question were not made to retire an indebtedness within the meaning of section 351 (b) (2) (B), supra.
The contention that the two instruments designated “promissory notes” constituted certificates of preferred stock of petitioner can not be sustained, for, in our opinion, such a holding would be contrary to the facts herein and the principles of law heretofore announced by this Board.
The petitioner’s entire authorized capital stock of 3,000 no par value shares had been issued and were outstanding prior to December 13, 1933, and remained outstanding subsequent thereto and at all times material here. On December 13,1933, the petitioner entered into an agreement with the Hawkins Co. and the Howard Co. whereby it acknowledged an “existing indebtedness” in the principal sum of $5,000 to the Hawkins Co. and the latter agreed to “loan” to petitioner an additional sum in excess of $150,000 and, also, the Howard Co. agreed to “lend” to petitioner the sum of $149,000. In *160 the same agreement the petitioner agreed to issue its interest bearing “income note” to each of those companies in the principal amount of their respective loans payable out of net earnings prior to the declaration or payment of any dividends on petitioner’s capital stock. The terms of that agreement were carried out. The agreed loans were made to petitioner during December 1933 and at the same time the petitioner issued instruments denominated “promissory notes” as evidences of its indebtedness so incurred. Clearly, the parties to those transactions intended to create a debtor-creditor relationship in December 1933, and all of their acts have been upon the basis of and have given full effect to such a relationship.
By the terms of each note, the petitioner promised to pay a definite principal sum of money and a specified rate of interest thereon to the Hawkins Co. and the Howard Co., respectively. The interest was cumulative and, while the payment thereof might be deferred by the obligor only if it lacked sufficient earnings in any one year, the petitioner was not thereby relieved of its obligation for such interest to the obligees, since the unpaid interest of one year would be payable out of the earnings of later years. Both principal and interest were payable out of petitioner’s net earnings, as defined in the “promissory notes”, or, at petitioner’s option, out of other funds. The incurring by petitioner of additional liabilities, other than for current expenses, was specifically circumscribed so that the holders of the notes were, to a certain degree, preferred creditors. The petitioner was obligated to apply its available net earnings first to the payment of interest due and then to the reduction of the principal of the notes, and such obligation has, in fact, been met. The holders of the notes were not required to await final liquidation of petitioner for the return of the principal of their loans. They had no voting rights, no right to participate in the general management of petitioner, and no right similar to a stockholder’s pro rata participation in the final distribution of any net assets on hand upon dissolution or liquidation of petitioner. The fact that both principal and interest of the notes were payable primarily out of net earnings and that the notes had no fixed due date does not, in the light of their other attributes, destroy the character of the “promissory notes” as evidences of indebtednesses. Upon authority of the principles of law announced in Schmoll Fils Associated, Inc., 39 B. T. A. 411, and the cases cited therein, as applied to the facts of the instant case, we hold that the petitioner’s two instruments denominated “promissory notes” dated December 13 and December 22, 1933, to the Hawkins Co. and the Howard Co., respectively, did not constitute shares of preferred stock, but constituted evidences of petitioner’s indebtedness to each of those two creditor companies. Cf. Commissioner *161 v. LaFayette Life Insurance Co., 67 Fed. (2d) 209, reversing 26 B. T. A. 946. While the Schmoll case, supra, involved a claimed deduction for interest paid on indebtedness for the purpose of determining income tax on ordinary net income and the instant case involves a claimed deduction for payments in partial retirement of an indebtedness for the purpose of determining surtax on the undistributed adjusted net income of a personal holding company, the fundamental question in the Schmoll case was whether an indebtedness had been incurred, just as in the instant case. Here, the facts disclose a stronger case for the taxpayer, for petitioner was obligated to apply its available net earnings to the repayment of the principal of the loans to it, while in the Schmoll case the principal of the loans became due only at the option of the taxpayer, except in case of bankruptcy, dissolution, or liquidation.
In our opinion the petitioner incurred, prior to January 1, 1934, an “indebtedness” of $158,600 to the Hawkins Co. and of $149,000 to the Howard Co., as evidenced by the above mentioned two instruments, within the meaning of section 351 (b) (2) (B), supra. During the taxable year 1934 petitioner paid a total of $97,700 to partially retire such indebtedness and since it was obligated to do so by the terms of its indebtedness there is no question but that such amount was reasonable. The respondent erred in disallowing the claimed deduction of $97,700 from petitioner’s adjusted net income for the purpose of determining its undistributed adjusted net income.
In view of this conclusion, petitioner’s alternative assignment of error need not be considered.
Reviewed by the Board.

Decision will be entered for the petitioner.

Mellott and KerN dissent.

 SEC. 351. SURTAX ON PERSONAL HOLDING COMPANIES.
(a) Imposition op Tax. — There shall be levied, collected, and paid, for each taxable year, upon the undistributed adjusted net income of every personal holding company a surtax equal to the sum of the following:
*******
(b) Definitions. — As used in this title—
* * * * * % *
(2) The term “undistributed adjusted net income’’ means the adjusted net income minus the sum of:
(A) 20 per centum of the excess of the adjusted net income over the amount of dividends received from personal holding companies which are allowable as a deduction for the purposes of the tax imposed by section 13 or 204;
(B) Amounts used or set aside to retire indebtedness incurred prior to January 1, 1934, if such amounts are reasonable, with reference to the size and terms of such indebtedness; and
(C) Dividends paid during the taxable year.